Todd A. Walburg (SBN 213063)
**BAILEY & GLASSER, LLP**
1999 Harrison St., Suite 660
Oakland, CA 94612
Telephone: (510) 272-8000
Facsimile: (510) 463-0291
Email: twalburg@baileyglasser.com

John W. Barrett (*Pro Hac Vice Anticipated*)
Benjamin J. Hogan (*Pro Hac Vice Anticipated*)
**BAILEY & GLASSER, LLP**
209 Capitol Street
Charleston WV 25301
Telephone: (304) 340-2287
Facsimile: (304) 342-1110
Email: jbarrett@baileyglasser.com
bhogan@baileyglasser.com

Andrew W. Heidarpour (*Pro Hac Vice Anticipated*)
**HEIDARPOUR LAW FIRM, PLLC**
1300 Pennsylvania Ave. NW, 190-318
Washington, DC 20004
Telephone: (202) 234-2727
Email: AHeidarpour@HLFirm.com

*Attorneys for Plaintiffs IDEDA ANTOSI,
individually and on behalf of a proposed class*

# IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| IDEDA ANTOSI, individually and on behalf of a proposed class,<br><br>Plaintiffs,<br><br>v.<br><br>DOORDASH, INC.,<br><br>Defendant. | Case No.   21-8096<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

1
CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

# CLASS ACTION COMPLAINT

Plaintiff Ideda Antosi, individually and on behalf of all others similarly situated, files this Class Action Complaint and Jury Demand for damages, injunctive relief, equitable relief, and any other relief deemed just and proper arising from Defendant's violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, *et seq*. In support, Plaintiff makes the following allegations based on his personal knowledge and upon information and belief.

## I.     Summary of the Claims

1. Under the reasonable restrictions of the TCPA, Defendant DoorDash, Inc., is prohibited from using a prerecorded or artificial voice message to call a residential telephone number without the recipient's prior express consent. The TCPA also prohibits DoorDash from making any telephone solicitations to persons who have listed their numbers on the National Do-Not-Call Registry ("DNC Registry").

2. Plaintiff Ideda Antosi is one of the millions of consumers who has listed his telephone number on the DNC Registry. Nevertheless, as part of DoorDash's misguided attempt to solicit consumers to work as food delivery drivers and/or use its services, Plaintiff received more than a dozen calls from DoorDash to his residential telephone line that used prerecorded or artificial voice messages without first obtaining his prior express consent.

3. DoorDash is a sophisticated, publicly-traded online food ordering and food delivery platform, and could easily avoid these violations. But, because of its lax corporate practices and apparent lack of regard for the sensible restrictions of the TCPA, it has not done so.

4. To enforce the TCPA, recover statutory damages, and end DoorDash's violations, Plaintiff brings this action on behalf of two classes of similarly situated consumers: (1) a class of residential telephone users to whom DoorDash directed calls using artificial and prerecorded voice messages without consent, and (2) a class of residential telephone users whose numbers were

Listed on the DNC Registry but still received multiple calls within any twelve-month period.

## II. The Parties

5. Plaintiff Ideda Antosi is a natural person residing in New York, New York.

6. Defendant DoorDash, Inc. is a Delaware corporation with its principal place of business at 303 2nd Street, South Tower Suite 800, San Francisco, California 94107.

## III. Jurisdiction and Venue

7. This Court has original federal question and subject matter jurisdiction under 28 U.S.C. §1331 and 47 U.S.C. § 227, *et seq*.; *Mims v. Arrow Fin. Services*, LLC, 132 S. Ct. 740 (2012). This Court also possesses subject matter jurisdiction under the Class Action Fairness Act because at least one of the Class members is a citizen of a different state than one Defendant; there are more than 100 members of the Class; and upon information and belief the aggregate amount in controversy exceeds $5,000,000.00 exclusive of interest and costs. *See* 28 U.S.C. § 1332(d)(2)(A).

8. Personal jurisdiction is proper over the Defendant because its headquarters and principal place of business is located in San Francisco, California.

9. Venue is also proper under 28 U.S.C. § 1391(b)(1) because Defendant resides in this District.

## IV. Intra-District Assignment

10. Plaintiff requests assignment to the San Francisco Division because Defendant DoorDash, Inc. has its principal place of business at 303 2nd Street, South Tower Suite 800, San Francisco, California 94107.

## V. TCPA Background

11. According to the Federal Trade Commission's December 2019 Biennial Report to Congress, the emergence of new communications technologies has caused the number of illegal telemarketing calls to explode in recent years. Consumer complaints to the FTC about illegal calls

3
CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

have skyrocketed over the last 10 years, growing from about 63,000 per month in 2009 to an average of more than 315,000 per month in 2019.

12. As one publication put it, "[i]f robocalls were a disease, they would be an epidemic." Rage Against Robocalls, Consumer Reports (July 28, 2015).

13. Congress enacted the TCPA in 1991 to regulate the explosive growth of the telemarketing industry and protect citizens from the nuisance and invasion of privacy caused by unwanted telephone calls, described by its chief sponsor as the "scourge of modern civilization. They wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone out of the wall." 137 Cong. Rec. 30, 821 (1991).

14. The sheer volume of illegal telemarketing overwhelms the enforcement efforts of government agencies such as the FTC and the Federal Communications Commission. Consequently, private consumer enforcement actions play a critical role in combatting illegal telemarketing. 47 U.S.C. § 227(c).

15. In 2003, the FTC established the National Do-Not-Call Registry, which allows consumers to opt out of receiving telemarketing calls by putting their number on the DNC Registry. Unsurprisingly, the National Do-Not-Call Registry is "wildly popular with consumers" and, as of September 30, 2019, has over 239 million active registrations.[1]

16. Title 47 U.S.C. § 227(b) regulates so-called "robocalls"— calls using an artificial or prerecorded voice.

---

[1] Fed. Trade Comm'n, *The Do Not Call Registry*, https://www.ftc.gov/news-events/media-resources/do-not-call-registry; Fed. Trade Comm'n, *2019 Biennial Rep. to Congress* (Dec. 2019), https://www.ftc.gov/system/files/documents/reports/biennial-report-congress-under-do-not-call-registry-fee-extension-act-2007-operation-national-do-not/p034305dncreport2019.pdf.

17. Specifically, the TCPA prohibits telemarketers and businesses from making any telephone call to a consumer's residential telephone line using an artificial or prerecorded voice to deliver a message without the recipient's prior express consent. 47 U.S.C. § 227(b)(1)(B). Furthermore, the TCPA and its implementing regulations prohibit more than one call in a twelve-month period to any number listed on the National Do-Not-Call Registry. 47 C.F.R. § 64.1200(c)(2).

18. Persons who receive calls in violation of these provisions may bring an action to recover the greater of the monetary loss caused by the violation, or $500. 47 U.S.C § 227(b)(3). If the Court finds Defendant willfully or knowingly violated the TCPA, it may increase the award to up to $1500 per violation. *Id.*

## VI. Factual Allegations

19. The COVID-19 global pandemic shuttered restaurants and sent people home. The demand for food delivery services exploded.

20. In response to this increased demand and a massive labor shortage, the food delivery service DoorDash boosted its sales and marketing efforts more than 150% to lure more consumers to drive and deliver food for DoorDash.

21. As part of its nation-wide marketing efforts, DoorDash placed telemarketing calls to unwitting and non-consenting consumers to recruit them to work as delivery drivers, or "Dashers," for DoorDash, and to also use DoorDash's services.

22. Plaintiff's residential telephone number, XXX-XXX-0227, has been listed on the DNC Registry since November 15, 2008.

23. Plaintiff has no business relationship with DoorDash, and he has never expressed interest in employment with DoorDash.

24. Nonetheless, beginning in June 2021, Plaintiff began receiving a series of annoying, invasive, aggravating, and time-consuming telemarketing calls from DoorDash soliciting Plaintiff to work for DoorDash and/or use its services.

25. On or about June 16, 2021, Defendant made a robocall to Plaintiff's residential telephone line XXX-XXX-0227 from a caller ID number 929-427-0934. Plaintiff answered the call, which featured an avatar advising that he could set up an account with DoorDash, get paid fast, and make up to $18 an hour. When Plaintiff called the number back, a prerecorded voice gave the following instruction: "If you are a California resident, press 1."

26. On or about June 16, 2021, Defendant made a *second* call to Plaintiff's residential telephone line XXX-XXX-0227 from a caller ID number 929-427-0830. Plaintiff answered the call, which featured the same avatar advising that he could set up an account with DoorDash. When Plaintiff called the number back, a prerecorded voice gave the following instruction: "If you are a California resident, press 1."

27. On or about June 17, 2021, Defendant made a *third* call to Plaintiff's residential telephone line XXX-XXX-0227 from a caller ID number 929-427-0671. Plaintiff answered the call, which featured the same avatar advising that he could set up an account with DoorDash. When Plaintiff called the number back, a prerecorded voice gave the following instruction: "If you are a California resident, press 1."

28. On or about June 17, 2021, Defendant made a *fourth* call to Plaintiff's residential telephone line XXX-XXX-0227from a caller ID number 929-427-0916. Plaintiff answered the call, which featured the same avatar advising that he could set up an account with DoorDash. When Plaintiff called the number back, a prerecorded voice gave the following instruction: "If you are a California resident, press 1."

29. On or about June 18, 2021, Defendant made a *fifth* call to Plaintiff's residential

telephone line XXX-XXX-0227 from a caller ID number 929-427-0972. Plaintiff answered the call, which featured the same avatar advising that he could set up an account with DoorDash. When Plaintiff called the number back, a prerecorded voice gave the following instruction: "If you are a California resident, press 1."

30. On or about June 18, 2021, Defendant made a *sixth* call to Plaintiff's residential telephone line XXX-XXX-0227 from a caller ID number 929-427-0743. Plaintiff answered the call, which featured the same avatar advising that he could set up an account with DoorDash. When Plaintiff called the number back, a prerecorded voice gave the following instruction: "If you are a California resident, press 1."

31. On or about June 21, 2021, Defendant made a *seventh* call to Plaintiff's residential telephone line XXX-XXX-0227 from a caller ID number 929-427-0735. Plaintiff answered the call, which featured the same avatar advising that he could set up an account with DoorDash. When Plaintiff called the number back, a prerecorded voice gave the following instruction: "If you are a California resident, press 1."

32. On or about June 22, 2021, Defendant made an *eighth* call to Plaintiff's residential telephone line XXX-XXX-0227 from a caller ID number 929-427-0869. Plaintiff answered the call, which featured the same avatar advising that he could set up an account with DoorDash. When Plaintiff called the number back, a prerecorded voice gave the following instruction: "If you are a California resident, press 1."

33. On or about June 22, 2021, Defendant made a *ninth* call to Plaintiff's residential telephone line XXX-XXX-0227 from a caller ID number 929-427-0677. Plaintiff answered the call, which featured the same avatar advising that he could set up an account with DoorDash. When Plaintiff called the number back, a prerecorded voice gave the following instruction: "If you are a California resident, press 1."

34. On or about June 23, 2021, Defendant made a *tenth* call to Plaintiff's residential telephone line XXX-XXX-0227 from a caller ID number 929-427-0682. Plaintiff answered the call, which featured the same avatar advising that he could set up an account with DoorDash. When Plaintiff called the number back, a prerecorded voice gave the following instruction: "If you are a California resident, press 1."

35. On or about June 23, 2021, Defendant made an *eleventh* call to Plaintiff's residential telephone line XXX-XXX-0227 from a caller ID number 929-427-0580. Plaintiff answered the call, which featured the same avatar advising that he could set up an account with DoorDash. When Plaintiff called the number back, a prerecorded voice gave the following instruction: "If you are a California resident, press 1."

36. On or about June 30, 2021, Defendant made a *twelfth* call to Plaintiff's residential telephone line XXX-XXX-0227 from a caller ID number 929-427-0941. Plaintiff answered the call, which featured the same avatar advising that he could set up an account with DoorDash. When Plaintiff called the number back, a prerecorded voice gave the following instruction: "If you are a California resident, press 1."

37. Fed up after receiving the twelfth call, Plaintiff "played along" by pressing 1 as instructed to find out who was behind the calls. Thereafter, Plaintiff was connected with a computerized avatar that explained Defendant's employment benefits and asked a series of questions to see if Plaintiff qualified for employment as a driver. Specifically, the avatar explained DoorDash's business model and stated that drivers could earn "up to $18 per hour." Additionally, the avatar boasted that DoorDash drivers were paid daily, had flexibility in choosing their work hours, and got to "be [their] own boss." After answering a few basic questions, Plaintiff was told that he was "prequalified" for a position as a DoorDash driver and that he would be transferred to another representative, despite the fact that Plaintiff told the avatar that he does not have a vehicle.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

38. Plaintiff has been gainfully employed at his present job for over 15 years, has made no employment inquiries, and has taken no steps whatsoever to seek new employment with Defendant or anyone else.

39. Plaintiff never consented verbally or in writing to have Defendant contact him using prerecorded calls. Furthermore, Plaintiff's number appeared on the Do-Not-Call Registry at the time all of the foregoing calls were made.

### VII. Class Action Allegations

40. Plaintiff brings this action under Federal Rule of Civil Procedure 23(a), (b)(2), and (b)(3) as a representative of the following classes:

<u>Class One (the "Prerecord Class") (Count One):</u>

All persons within the United States who, within the four years prior to the filing of this action, (1) received a phone call from or on behalf of Defendant, (2) to their residential telephone line, (3) using an artificial or prerecorded voice, (4) without prior express consent or after revoking consent.

<u>Class Two (the "DNC Class") (Count Two):</u>

All persons within the United States who, within the four years prior to the filing of this action, (1) whose telephone numbers were listed on the National Do-Not-Call Registry, (2) who received more than one call from or on behalf of Defendant within any twelve-month period, (3) to promote Defendant's products and employment services.

41. Excluded from the classes are Defendant, any entities in which Defendant has a controlling interest, Defendant's agents and employees, any Judge to whom this action is assigned, and any member of such Judge's staff and immediate family.

42. The proposed class members are identifiable through phone records and phone number databases that will be obtained through discovery.

43. Plaintiff and members of the proposed classes were harmed by the Defendant's acts in at least the following ways: Defendant illegally contacted Plaintiffs and the members of the classes who were registered on the National Do-Not-Call Registry, invading the privacy of the

Plaintiff and class members and subjecting them to annoying and harassing nuisance calls.

44. Plaintiff is a member of both classes.

45. Plaintiff reserves the right to amend the definition of the class if discovery or further investigation reveals that the class should be expanded or otherwise modified.

46. *Ascertainability*: Names and addresses of members of the Class are available from Defendant's records. Notice can be provided to the members of the Class through direct mailing, publication, or otherwise using techniques and a form of notice similar to those customarily used in consumer class actions arising under the TCPA.

47. *Commonality*: There are questions of law and fact common to all class members, including:

    a. Whether the calls were placed without obtaining the recipients' valid prior express written consent;

    b. Whether the calls were placed after Plaintiff and members of the classes registered their numbers on the National Do-Not-Call Registry and, after having done so, whether Plaintiff and members of the class received more than one call within a twelve-month period;

    c. Whether Defendant's conduct was negligent, willful, or knowing;

    d. Whether Plaintiff and the class members are entitled to statutory damages because of Defendant's actions and the amount of such damages; and

    e. Whether Defendant should be enjoined from engaging in such conduct in the future.

48. *Numerosity*: The exact number of class members is unknown to Plaintiff at this time and can only be determined through discovery. However, given the capabilities of the telephone systems used to place and process prerecorded message calls, the number of class members likely is in the thousands. Therefore, the class is sufficiently numerous that individual

joinder of all members is impracticable.

49. *Typicality:* Plaintiff's claims are based on the same facts and legal theories and are, therefore, typical of the claims of the other class members which he seeks to represent under Federal Rule of Civil Procedure 23(a)(3). That is, Plaintiff and each member of the class received calls on their residential telephone lines from Defendant using a prerecorded message without their prior express consent. Likewise, Plaintiff and class members received more than one telemarketing call within a twelve-month period on telephone numbers listed on the National Do-Not-Call Registry. There are no defenses that Defendant may have that are unique to Plaintiff. Plaintiff has fulfilled all conditions precedent to bring this lawsuit.

50. *Adequacy*: Plaintiff will fairly and adequately represent and protect the interests of the members of the classes as required by Federal Rule of Civil Procedure Rule 23(a)(4). Plaintiff is an adequate representative of the classes because his interests do not conflict with the interests of the members of the classes, and Plaintiff is represented by counsel skilled and experienced in class actions, including TCPA class actions.

51. *Superiority:* A class action is superior to all other available methods of the fair and efficient adjudication of the claims asserted in this action under Federal Rule of Civil Procedure 23(b)(3) because:

   a. The expense and burden of individual litigation makes it economically unfeasible for members of the Classes to seek to redress their claims other than through the procedure of a class action;

   b. If separate actions were brought by individual members of the Classes, the resulting duplicity of lawsuits would cause members to seek to redress their claims other than through the procedure of a class action; and

   c. Absent a class action, Defendant is likely to continue violating the TCPA based on

11
CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

the allegations complained of herein.

52. ***Predominance:*** Common questions of law and fact predominate over any questions affecting individual class members.

### VIII. Claims for Relief

**COUNT ONE:**
**Violation of the TCPA's provisions prohibiting**
**prerecorded calls to residential telephone lines**

53. Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

54. Defendant violated the TCPA, either directly or through the actions of others, by placing telephone calls to Plaintiff's and class members' residential telephone lines using an artificial or prerecorded voice without prior express consent. *See* 47 U.S.C. § 227(b)(1)(B).

55. Defendant's violations were willful and/or knowing.

**COUNT TWO:**
**Violations of the TCPA's Do-Not-Call provisions**

56. Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

57. Defendant violated the TCPA, either directly or through the actions of others, by placing phone calls to the Plaintiff's residential telephone line after Plaintiff registered on the National Do-Not-Call Registry, and Defendant did so for the purpose of marketing products and/or services to Plaintiff and also did so to members of the proposed class, in violation of 47 U.S.C. § 227(c), 47 C.F.R. § 64.1200(c)(2).

58. Defendant's violations were willful and/or knowing.

### IX. Relief Sought

Plaintiff, individually and on behalf of all others similarly situated, respectfully

requests the following relief:

    A.    That the Court certify the proposed classes as requested;

    B.    That the Court appoint Plaintiff as class representative;

    C.    That the Court appoint the undersigned counsel as counsel for the classes;

    D.    That the Court enter a judgment permanently enjoining Defendant from engaging in or relying upon telemarketing that violates the TCPA;

    E.    That the Court enter a judgment requiring Defendant to adopt measures to ensure TCPA compliance, and that the Court retain jurisdiction for a period of six months thereafter to ensure that Defendant complies with those measures;

    F.    That the Court enter a judgment awarding any other injunctive relief necessary to ensure the Defendant's compliance with the TCPA;

    G.    That the Court enter a judgment awarding Plaintiffs and all class members statutory damages of $500 for each negligent violation of the TCPA and $1,500 for each knowing or willful violation;

    H.    That the Court award pre- and post-judgment interest on all amounts awarded to Plaintiff and members of the classes;

    I.    That the Court enter an order awarding the Plaintiffs reasonable attorneys' fees and costs; and

    J.    That the Plaintiffs and all members of the classes be granted other relief as is just and equitable under the circumstances.

## **DEMAND FOR JURY TRIAL**

59. Under Federal Rule of Civil Procedure 38(b), Plaintiff hereby demands a trial by jury of any and all issues in this action so triable of right.

Dated: October 15, 2021

Respectfully submitted,

Bailey & Glasser LLP

By: /s/ Todd A. Walburg
Todd A. Walburg

Todd A. Walburg (SBN 213063)
**BAILEY & GLASSER, LLP**
1999 Harrison St., Suite 660
Oakland, CA 94612
Telephone: (510) 272-8000
Email: twalburg@baileyglasser.com

John W. Barrett (*Pro Hac Vice Anticipated*)
Benjamin J. Hogan (*Pro Hac Vice Anticipated*)
**BAILEY & GLASSER, LLP**
209 Capitol Street
Charleston WV 25301
Telephone: (304) 340-2287
Facsimile: (304) 342-1110
Email: jbarrett@baileyglasser.com
bhogan@baileyglasser.com

Andrew W. Heidarpour (*Pro Hac Vice Anticip.*)
**HEIDARPOUR LAW FIRM, PLLC**
1300 Pennsylvania Ave. NW, 190-318
Washington, DC 20004
Telephone: (202) 234-2727
Email: AHeidarpour@HLFirm.com

*Attorneys for Plaintiffs IDEDA ANTOSI, individually and on behalf of a proposed class*