Mark S. Eisen (CA 289009)
**BENESCH, FRIEDLANDER, COPLAN &**
 **ARONOFF LLP**
71 South Wacker Drive, Suite 1600
Chicago, Illinois 60606
Telephone:  312-212-4956
Facsimile:  312-767-9192
meisen@beneschlaw.com

*Attorneys for DoorDash, Inc.*

## IN THE UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| IDEDA ANTOSI, individually and on behalf of a proposed class,<br><br>                    Plaintiffs,<br><br>          v.<br><br>DOORDASH, INC.,<br><br>                    Defendant. | Case No.: 21-CV-08096-TSH<br><br>**DOORDASH, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Judge:           Hon. Thomas S. Hixson<br>Date:            January 20, 2022<br>Time:            10:00 a.m.<br>Location:        Courtroom G, 15th Floor<br>Complaint Filed: October 15, 2021<br>Trial Date:      None Set |

# <u>TABLE OF CONTENTS</u>

NOTICE OF MOTION AND MOTION TO DISMISS ................................................................. 1

MEMORANDUM OF POINTS AND AUTHORITIES ........................................................ 2

STATEMENT OF ISSUES TO BE DECIDED .................................................................. 3

BACKGROUND ................................................................................................................. 3

I.     THE COMPLAINT. ............................................................................................. 3

DISCUSSION ..................................................................................................................... 4

I.     THIS COURT SHOULD DISMISS PLAINTIFF'S COMPLAINT. ................................. 4

     A.    Legal Standard. ......................................................................................... 4

     B.    Plaintiff's Claims Fail as a Matter of Law Because He Alleges only the
          Receipt of Employment Recruitment Calls. ............................................ 5

          i.    Plaintiff's TCPA claims apply only to telemarketing, advertising and
                solicitation calls. ......................................................................... 5

          ii.   Employment recruitment calls are not advertisements or
                telemarketing and thus are not actionable under 47 U.S.C. §
                227(b)(1)(B). .............................................................................. 7

          iii.  Job recruitment calls are not telephone solicitations under the TCPA
                and thus Plaintiff's claim under 47 U.S.C. § 227(c)(5) must be
                dismissed. ................................................................................. 12

CONCLUSION ................................................................................................................. 14

1

## <u>TABLE OF AUTHORITIES</u>

2

3

**Page(s)**

4

**Federal Cases**

5

*Alleman v. Yellowbook, Inc.*
   No. 12-cv-1300-, 2013 WL 4782217 (S.D. Ill. Sept. 6, 2013) ........................................10, 14

6

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009).........................................................................................................4

7

8

*Barbizon School v. Sentinel Ins. Co.,*
   No. 20-cv-08578, 2021 WL 5758890 (N.D. Cal. Dec. 3, 2021) ......................................4

9

10

*Bell Atlantic Corporation v. Twombly,*
   550 U.S. 544 (2007).........................................................................................................4

11

12

*Carson Optical Inc. v. eBay Inc.,*
   202 F. Supp. 3d 247 (E.D.N.Y. 2016) .............................................................................11

13

14

*Chesbro v. Best Buy Stores, L.P.,*
   705 F.3d 913 (9th Cir. 2012) ...............................................................................6, 8, 11

15

*Dolemba v. Illinois Farmers Insurance Company,*
   No. 15-cv-463, 2015 WL 4727331, at *2 (N.D. Ill. Aug. 10, 2015) ................................9, 11

16

17

*Dolemba v. Illinois Farmers Insurance Company,*
   213 F. Supp. 3d 988 (N.D. Ill. 2016) .............................................................................9

18

19

*Friedman v. Torchmark Corporation,*
   No. 12-cv-2837-, 2013 WL 4102201 (S.D. Cal. Aug. 13, 2013) ................................. *passim*

20

*Gerrard v. Acara Solutions Inc.,*
   469 F. Supp. 3d 96 (W.D.N.Y. 2020) .............................................................................10

21

22

*Golan v. Veritas Entertainment, LLC,*
   788 F.3d 814 (8th Cir. 2015) .............................................................................8

23

24

*Lutz Appellate Services v. Curry*
   859 F. Supp. 180 (E.D. Pa. 1994) ...............................................................................7, 9

25

*Moss v. U.S. Secret Servce,*
   572 F.3d 962 (9th Cir. 2009) ...............................................................................4

26

27

*Murphy v. DCI Biologicals Orlando, LLC,*
   No. 12-cv-1459, 2013 WL 6865772 (M.D. Fla. Dec. 31, 2013) ............................6, 10, 13, 14

28

ii

*Orea v. Nielsen Audio, Inc.*,
   No. 14-cv-04235, 2015 WL 1885936 (N.D. Cal. Apr. 24, 2015)...........................................13

*Payton v. Kale Realty, LLC*,
   164 F. Supp. 3d 1050 (N.D. Ill. 2016) .....................................................................................9

*Perlman v. Zell*,
   938 F. Supp. 1327 (N.D. Ill. 1996) ........................................................................................11

*Reardon v. Uber Technologies, Inc.*,
   115 F. Supp. 3d 1090 (N.D. Cal. 2015) ...........................................................................2, 8, 12

*Rogers v. Postmates Inc.*,
   No. 19-cv-05619, 2020 WL 3869191 (N.D. Cal. July 9, 2020) ...........................................2, 4

*Salmon v. CRST Expedited, Inc.*,
   No. 14-cv-0265, 2015 WL 1395237 (N.D. Okla. Mar. 25, 2015) ....................................10, 12

*Valley Surgical Center LLC v. County of Los Angeles*,
   No. 13--cv-02265, 2015 WL 3825310 (C.D. Cal. June 18, 2015)...........................................4

*Williams-Diggins v. Republic Services*,
   No. 18-cv-2313, 2019 WL 5394022 (N.D. Ohio Apr. 25, 2019) ............................................6

**Other Authorities**

*In the Matter of Rules & Regulations Implementing the Telephone Consumer*
   *Proections Act of 1991*,
   7 F.C.C. Rcd. 8752 (1992)...............................................................................................5, 7

*In the Matter of Rules & Regulations Implementing the Telephone Consumer*
   *Protection Act of 1991*,
   23 F.C.C. Rcd. 559 (2008) ....................................................................................................5

*In the Matter of Rules & Regulations Implementing the Telephone Consumer*
   *Protection Act of 1991*,
   27 F.C.C. Rcd. 1830 (2012) ..................................................................................................5

*Limits on Exempted Calls Under the Telephone Consumer Protection Act of 1991*,
   86 FR 11443-01 (February 25, 2021) ....................................................................................6

**Federal Statutes & Regulations**

47 U.S.C. § 227............................................................................................................... *passim*

47 U.S.C. § 227(a)(4)..............................................................................................................12

47 U.S.C. § 227(b)(1)(B) ................................................................................................ *passim*

47 U.S.C. § 227(c)(5)................................................................................................... *passim*

47 C.F.R. § 64.1200(a)(2)..............................................................................................8

47 C.F.R. § 64.1200(a)(3).......................................................................................5, 6, 7

47 C.F.R. § 64.1200(c).................................................................................................. *passim*

47 C.F.R. §§ 64.1200(f)(1)............................................................................................8

47 C.F.R. § 64.1200(f)(13).....................................................................................2, 8, 12

47 C.F.R. §§ 64.1200(f)(15)....................................................................................2, 7, 12

1

<u>**NOTICE OF MOTION AND MOTION TO DISMISS**</u>

2

**TO ALL PARTIES AND TO THEIR COUNSEL OF RECORD:**

3

      **PLEASE TAKE NOTICE** that on January 20, 2021, at 10:00 a.m., or as soon thereafter

4 as this matter may be heard, in the courtroom of the Honorable Judge Thomas S. Hixson, located

5 in Courtroom G - 15th Floor, 450 Golden Gate Avenue, San Francisco, CA 94102, Defendant

6 DoorDash, Inc. will and hereby does move this Court to dismiss Plaintiff's Complaint with

7 prejudice for failure to state a claim.

8       Plaintiff contends that he received calls on his residential telephone solely attempting to

9 recruit Plaintiff for employment.  Plaintiff, as a result, brings two claims under the Telephone

10 Consumer Protection Act, 47 U.S.C. § 227, *et seq*. ("TCPA") and seeks to represent two putative

11 classes.  However, the claims Plaintiff brings apply only to the receipt of *marketing* calls.

12 Employment recruitment calls have been routinely held, in this District and across the country, to

13 be non-marketing under the TCPA.  Plaintiff thus fails to state a claim as a matter of law and his

14 claims must be dismissed with prejudice.

15       This Motion is based on this Notice of Motion, the accompanying Memorandum of Points

16 and Authorities, all of the pleadings and other documents on file in this case, all other matters of

17 which the Court may take notice and any further argument or evidence that may be received by

18 the Court at the hearing.

19

20

21

22

23

24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiff contends that in June of 2021, he received twelve calls to his residential telephone attempting to recruit Plaintiff for a job with DoorDash.[1]  Plaintiff claims that these calls were placed despite his allegation that he is on the national do not call list.  As a result, Plaintiff brings two claims (on behalf of himself and two putative classes) under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, *et seq.*: (i) a claim under 47 U.S.C. § 227(b)(1)(B) for the receipt of prerecorded calls on his residential telephone and (ii) a claim under 47 U.S.C. § 227(c)(5) for the receipt of prerecorded calls to a number on the national do not call list.

Both claims fail as a matter of law because both claims are limited exclusively to *telemarketing* calls and solicitations.  Plaintiff did not receive marketing calls, however.  Plaintiff alleges he received solely employment recruitment calls (albeit, as DoorDash contends, having nothing whatsoever to do with DoorDash).  Telemarketing calls are calls initiated "for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services."  47 C.F.R. §§ 64.1200(f)(13), (f)(15).  Employment recruitment calls are self-evidently not telemarketing— the purpose is to provide an employment opportunity, not to encourage the purchase, rental or investment in anything.  Courts in this District and across the country uniformly agree and have dismissed materially identical TCPA cases as a result.  *See, e.g.*, *Reardon v. Uber Techs., Inc.*, 115 F. Supp. 3d 1090, 1096 (N.D. Cal. 2015) ("[T]exts sent to prospective drivers in this case do not promote goods or services and are not advertisements or telemarketing efforts."); *Friedman v. Torchmark Corp.*, No. 12-CV-2837-IEG BGS, 2013 WL 4102201, at *5 (S.D. Cal. Aug. 13, 2013) ("[A]n offer of employment is not material advertising the commercial availability . . . of any

---

[1]   Though Plaintiff's factual allegations must be accepted as true at this stage, DoorDash must note at the outset that it contends it had nothing whatsoever to do with the calls Plaintiff allegedly received, and firmly believes these calls to have been a scam.  Indeed, the calls on their face would not appear to be the work of a legitimate actor.  Plaintiff cannot so much as allege that the phone numbers at issue belonged to or are affiliated somehow with DoorDash.  Plaintiff has declined to accept a DoorDash declaration attesting to having nothing whatsoever to do with the calls. DoorDash reserves the right to pursue all proper remedies.  This is also not the first time this Court has had to evaluate a TCPA suit brought against an entity that had nothing to do with the outreach. *See Rogers v. Postmates Inc*., No. 19-CV-05619-TSH, 2020 WL 3869191, at *1 (N.D. Cal. July 9, 2020), *appeal dismissed*, 2021 WL 455321 (9th Cir. Jan. 15, 2021).

1  property, goods, or services" within the ordinary meaning of those words of the TCPA.") (internal

2  quotations and citations omitted).

3      Plaintiff, by his own allegations, received only calls recruiting him for employment.  These

4  calls are not telemarketing or solicitations under the TCPA as a matter of law and Plaintiff's

5  Complaint should be dismissed with prejudice.

6                    **STATEMENT OF ISSUES TO BE DECIDED**

7      1.    Whether Plaintiff received only non-marketing calls as a matter of law.

8      2.    Whether, as a result of receiving only non-marketing employment recruiting calls,

9  Plaintiff's claims must be dismissed with prejudice.

10                             **BACKGROUND**

11 **I.    THE COMPLAINT.**

12      This action arises out of Plaintiff's alleged receipt of unsolicited prerecorded messages that

13 Plaintiff asserts were from DoorDash.  (Dkt. 1.)  Plaintiff alleges that, beginning in June of 2021,

14 he received a series of identical prerecorded calls to his residential telephone, which he states is

15 on the national do not call list.  (*Id.* ¶¶ 22, 24.)  Plaintiff alleges that he received a dozen such calls,

16 all of which attempted to recruit Plaintiff for employment with DoorDash.  (*Id.* ¶¶ 25-36.)  Plaintiff

17 alleges that after the twelfth call, he "played along" with the prerecorded message to determine

18 "who was behind the calls."  (*Id.* ¶ 37.)  During this interaction, Plaintiff contends that the

19 following occurred:

20          [A] computerized avatar . . . explained Defendant's employment
21          benefits and asked a series of questions to see if Plaintiff qualified
            for employment as a driver. Specifically, the avatar explained
22          DoorDash's business model and stated that drivers could earn "up
            to $18 per hour." Additionally, the avatar boasted that DoorDash
23          drivers were paid daily, had flexibility in choosing their work hours,
            and got to "be [their] own boss." After answering a few basic
24          questions, Plaintiff was told that he was "prequalified" for a position
            as a DoorDash driver . . . .
25

26 (*Id.*)  Plaintiff thus makes abundantly clear that the calls at issue in this case solely concern

27 employment, and not the advertisement or encouragement of purchasing any products or services.

28

1     On the basis of these allegations, Plaintiff brings two claims under the TCPA. Plaintiff

2  brings one claim under 47 U.S.C. § 227(b)(1)(B) for the alleged receipt of unsolicited prerecorded

3  calls to a residential telephone line. And Plaintiff brings one claim under 47 U.S.C. § 227(c)(5)

4  for the alleged receipt of unsolicited calls to a number on the national do not call list in violation

5  of the TCPA's corresponding regulation 47 C.F.R. § 64.1200(c)(2). Plaintiff likewise seeks to

6  represent one class corresponding to each claim. (*See id.* ¶ 40.)

7                                          **DISCUSSION**

8  **I.      THIS COURT SHOULD DISMISS PLAINTIFF'S COMPLAINT.**

9          **A.     Legal Standard.**

10     To survive a motion to dismiss, a complaint must plead sufficient factual matter, if accepted

11  as true, to state a claim to relief that is plausible on its face. *See Ashcroft v. Iqbal*, 556 U.S. 662,

12  678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Plaintiff must plead "factual

13  content that allows the court to draw the reasonable inference that the defendant is liable for the

14  misconduct alleged." *Iqbal*, 556 U.S. at 678; *Rogers*, 2020 WL 3869191, at *2 (Hixson, M.J.)

15     This Court need only accept allegations pleaded with factual support that plausibly

16  demonstrate an entitlement to relief. *See Iqbal*, 556 U.S. at 678-79; *Moss v. U.S. Secret Serv.*, 572

17  F.3d 962, 969 (9th Cir. 2009) ("[F]or a complaint to survive a motion to dismiss, the non-

18  conclusory 'factual content,' and reasonable inferences from that content, must be plausibly

19  suggestive of a claim entitling the plaintiff to relief."); *Barbizon School v. Sentinel Ins. Co.*, No.

20  20-08578-TSH, 2021 WL 5758890, at *5 (N.D. Cal. Dec. 3, 2021). This Court need not accept as

21  true "naked assertion[s] devoid of further factual enhancement," conclusory allegations, legal

22  conclusions, unreasonable inferences or internally inconsistent allegations. *Iqbal*, 556 U.S. at

23  678-79 (internal quotations and citation omitted); *Valley Surgical Ctr. v. Cty. of Los Angeles*,

24  No.13-02265, 2015 WL 3825310, at *6 (C.D. Cal. June 18, 2015) ("Although the Court should

25  take the facts as pled in the light most favorable to the plaintiff, it need not accept internally

26  inconsistent facts as true."). The Supreme Court has admonished courts evaluating motions to

27  dismiss, "to draw on [their] judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

28

**B.**   **Plaintiff's Claims Fail as a Matter of Law Because He Alleges only the Receipt of Employment Recruitment Calls.**

       ***i.***     ***Plaintiff's TCPA claims apply only to telemarketing, advertising and solicitation calls.***

Plaintiff brings two TCPA claims: (i) a claim under 47 U.S.C. § 227(b)(1)(B) for the alleged receipt of unsolicited prerecorded calls to a residential telephone line and (ii) a claim under 47 U.S.C. § 227(c)(5) for the alleged receipt of unsolicited calls to a number on the national do not call list in violation of the TCPA's corresponding regulation 47 C.F.R. § 64.1200(c)(2).  Both claims, however, pertain *only* to telemarketing calls.

<u>First</u>, regarding Plaintiff's claim under Section 227(b)(1)(B), this provision states:

> It shall be unlawful for any person within the United States . . . —to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes, is made solely pursuant to the collection of a debt owed to or guaranteed by the United States, ***or is exempted by rule or order by the Commission under paragraph (2)(B)***.

47 U.S.C. § 227(b)(1)(B).  Paragraph (2)(B) permits the Federal Communications Commission ("FCC") to "exempt from the requirements of paragraph (1)(B)" non-commercial calls and calls made for a commercial purpose that do not include telemarketing.  *Id.* § 227(b)(2)(B).

Pursuant to this authority, the FCC did exactly that, implementing (in relevant part) two exemptions for (i) calls not made for commercial purposes and (ii) calls "made for a commercial purpose but does not include or introduce an advertisement or constitute telemarketing."  47 C.F.R. § 64.1200(a)(3); *In the Matter of Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C. Rcd. 1830, 1832 (2012) (explaining the FCC's authority under Section 227(b)(2)(B)); *In the Matter of Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*, 23 F.C.C. Rcd. 559, 560 (2008) ("Section 227(b)(2)(B) authorizes the Commission to exempt noncommercial and certain other classes of calls from the prohibition on prerecorded messages to residences."); *In the Matter of Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*,

1   7 F.C.C. Rcd. 8752 (1992) (enacting the exemptions); *see also Chesbro v. Best Buy Stores, L.P.*,

2   705 F.3d 913, 917 (9th Cir. 2012) (noting the FCC has used its delegate authority under Section

3   227(b)(2)(B) to exempt certain categories of calls, including commercial calls that do not introduce

4   an advertisement or constitute telemarketing); *Friedman*, 2013 WL 4102201, at *3 (same).[2]

5        As a result of the FCC's regulations, calls to residential lines are *exempt* if they are either

6   (i) non-commercial or (ii) are commercial, but do not introduce an advertisement or constitute

7   telemarketing. *See, e.g.*, *Friedman*, 2013 WL 4102201, at *4; 47 C.F.R. § 64.1200(a)(3).

8        <u>Second</u>, and as it relates to Plaintiff's claim under 47 U.S.C. § 227(c)(5), this section

9   permits a private right of action for claims alleging "more than one telephone call within any 12-

10  month period by or on behalf of the same entity in violation of the regulations prescribed under

11  this subsection . . . ." 47 U.S.C. § 227(c)(5). Plaintiff contends that the FCC's regulation provided

12  at 47 C.F.R. § 64.1200(c)(2) was violated here. (*See* Dkt. 1 ¶ 57.) This regulation provides:

13          No person or entity shall initiate any ***telephone solicitation*** to . . .
            (2) A residential telephone subscriber who has registered his or her
14          telephone number on the national do-not-call registry of persons
            who do not wish to receive telephone solicitations that is maintained
15          by the Federal Government.

16  47 C.F.R. § 64.1200(c)(2) (emphasis added).

17       Under this regulation, "[i]nformational, non-solicitation telephone calls to numbers on the

18  do-not-call registry do not violate the TCPA." *Williams-Diggins v. Republic Servs.*, No. 3:18 CV

19  2313-JZ, 2019 WL 5394022, at *1 (N.D. Ohio Apr. 25, 2019); *Murphy v. DCI Biologicals*

20  *Orlando, LLC*, No. 6:12-CV-1459-ORL, 2013 WL 6865772, at *10 (M.D. Fla. Dec. 31, 2013),

21  *aff'd*, 797 F.3d 1302 (11th Cir. 2015) (holding non-solicitation calls are not actionable under the

22  FCC's regulations at 47 C.F.R. § 64.1200(c)).

23       In sum, both of Plaintiff's claims require that he allege the receipt of telemarketing,

24  advertising or solicitation calls. Plaintiff's Complaint, as detailed below, proves that he received

25  no such calls.

26      [2]    DoorDash notes that while the FCC has altered these exemptions, those alterations have
    not yet taken effect and (as of the date of this filing) are delayed indefinitely. *See Limits on*
27  *Exempted Calls Under the Telephone Consumer Protection Act of 1991*, 86 FR 11443-01. They
    thus have no impact on the calls at issue here.
28

1
2

> ii.   **Employment recruitment calls are not advertisements or telemarketing and thus are not actionable under 47 U.S.C. § 227(b)(1)(B).**

3    Plaintiff concedes he received solely employment-related calls.  Plaintiff specifically

4    alleges that calls provided that he could sign up to work for DoorDash "get paid fast, and make up

5    to $18 an hour."  (Dkt. 1 ¶ 25.)  Plaintiff concedes that the calls pertained solely to job

6    recruitment—namely, (i) discussing DoorDash's[3] employment benefits and (ii) asking questions

7    to determine if Plaintiff qualified as a driver.  (*Id.* ¶ 37.)  The purpose of the calls, as Plaintiff

8    alleges, were to identify the benefits of working for DoorDash (including flexibility and rate of

9    pay) and, at the conclusion, Plaintiff was told he "prequalified" for a position with DoorDash.  (*Id.*)

10   There can be no mistaking that both the content and purpose of these calls, as Plaintiff affirmatively

11   alleges, was to recruit Plaintiff for employment.  These calls are not actionable under the claims

12   Plaintiff asserts.

13          As noted  above, 47 U.S.C. § 227(b)(1)(B) exempts non-commercial calls and commercial

14   calls that do not introduce an "advertisement" or constitute "telemarketing."  The FCC has

15   indicated that non-commercial calls "includes calls conducting research, market surveys, political

16   polling or similar activities which do not involve solicitation as defined by our rules."  *In the*

17   *Matter of Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*, 7 F.C.C. Rcd. 8752,

18   8774 (1992).  A "solicitation" under the TCPA "means the initiation of a telephone call or message

19   for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or

20   services."  47 C.F.R. § 64.1200(f)(15).  Calls concerning employment opportunities are not

21   commercial calls as they are not solicitations.  *See, e.g.*, *Lutz App. Servs., Inc. v. Curry*, 859 F.

22   Supp. 180, 181 (E.D. Pa. 1994) ("When, for example, an employer places a 'help wanted' ad, no

23   one speaks or thinks of it as a property solicitation or an offer of property.").

24          Nevertheless, even if employment opportunity calls were considered commercial in nature,

25   they would be exempt as commercial calls that do not "include or introduce an advertisement or

26   constitute telemarketing."  47 C.F.R. § 64.1200(a)(3)(iii).  The TCPA separately defines

27
28

---

[3]     Again, as noted above, DoorDash contends it had nothing whatsoever to do with the calls at issue and that Plaintiff was the unfortunate victim of an apparent scam.

advertisement and telemarketing, using materially identical phrasing:

> (1) The term advertisement means any material advertising the commercial availability or quality of any property, goods, or services.
> . . .
> (13) The term telemarketing means the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person.

47 C.F.R. §§ 64.1200(f)(1), (13). The definitions are substantively similar, and courts evaluating the distinction between the two definitions have noted that "[w]hile the content of the calls controlled whether they were 'advertisements,' their purpose controlled whether they were 'telemarketing.'" *Golan v. Veritas Entm't, LLC*, 788 F.3d 814, 820 (8th Cir. 2015) (citing 47 C.F.R. § 64.1200(f)(12)). The Ninth Circuit has admonished courts to evaluate TCPA claims, particularly on this very issue, "with a measure of common sense." *Chesbro v. Best Buy Stores, L.P.*, 705 F.3d 913, 918 (9th Cir. 2012).

Job recruitment calls, even if commercial, are neither advertisements nor telemarketing. An instructive analysis was undertaken by Judge Tigar in *Reardon v. Uber*, evaluating whether employment recruitment messages were advertisements or telemarketing under the TCPA.[4] *See Reardon*, 115 F. Supp. 3d at 1093. In *Reardon*, the plaintiffs brought a putative TCPA class action over the receipt of job recruitment text messages. *Id.* at 1094. Judge Tigar readily concluded:

> The Court finds that the texts at issue here were more akin to recruiting texts than advertising or telemarketing texts. . . . [T]he texts from Uber seeking to recruit drivers were not attempts to promote a "good" (its application) to those drivers, but instead was an attempt to recruit drivers so that those potential drivers could provide services to riders.

*Id.* at 1097.

---

[4]   The *Reardon* case involved the interpretation of 47 C.F.R. § 64.1200(a)(2), which regulates automated outreach to cellular telephones. Because this analysis turned on the application and interpretation of the terms "advertisement" and "telemarketing," the *Reardon* analysis is equally applicable here. The only distinction is the outcome of the analysis under Section 64.1200(a)(2) impacts merely the *type* of consent needed for the outreach (written versus non-written consent). The analysis under Plaintiff's claims, though, impacts *whether* consent is needed at all.

1    By way of further example, in *Friedman v. Torchmark*, a Southern District of California

2    court evaluated a TCPA claim stemming from prerecorded calls to a residential line in alleged

3    violation of 47 U.S.C. § 227(b)(1)(B).  *See, e.g.*, *Friedman*, 2013 WL 4102201, at *1.  The plaintiff

4    contended the call consisted of an invitation to a recruitment webinar to learn to sell the defendant's

5    insurance products.  *Id.*  The court dismissed the claim, holding "an offer of employment is not

6    'material advertising the commercial availability . . . of any property, goods, or services' within

7    the ordinary meaning of those words of the TCPA."  *Id.* at *5 (internal citation omitted).  The court

8    thus found a recruiting seminar analogous to an offer of employment.  *Id.* ("The messages in the

9    instant case inviting Plaintiff to attend a recruiting webinar wherein Plaintiff could learn about

10   Defendant's products to potentially sell them . . . is similar to the offer of employment . . . .").

11   Two Northern District of Illinois cases likewise held that job recruitment calls are neither

12   advertisements nor telemarketing in dismissing TCPA claims.  In *Dolemba v. Illinois Farmers*

13   *Insurance*, the court evaluated a TCPA claim concerning a prerecorded call to become a Farmers

14   agent.  *See* No. 15 C 463, 2015 WL 4727331, at *2 (N.D. Ill. Aug. 10, 2015).  The court quickly

15   disregarded the plaintiff's "artful drafting" that the call was for a "business opportunity."  *Id.*  The

16   court first determined that the call did not introduce an advertisement because it was merely a job

17   recruitment call.  *See id.* at *3-4.  The court next determined that the call did not constitute

18   telemarketing because "the call did not explicitly or implicitly encourage him to purchase, or invest

19   in, any property, goods, or services."  *Id.* at *5 (internal quotations omitted); *see also Dolemba v.*

20   *Illinois Farmers Ins. Co.*, 213 F. Supp. 3d 988, 995 (N.D. Ill. 2016) (dismissing claims relating to

21   residential calls with prejudice).  In *Payton v. Kale Realty*, another Northern District of Illinois

22   court determined that job recruitment messages were neither advertising nor telemarketing.  *See*

23   164 F. Supp. 3d 1050, 1062 (N.D. Ill. 2016); *see also id.* at 1063 ("[T]he court finds that the intent

24   of the message is not to encourage an individual to purchase any of Kale's services but rather to

25   inform plaintiffs about an opportunity to become an independent contractor for Kale.").

26   In *Lutz Appellate Services v. Curry*, an Eastern District of Pennsylvania court evaluated

27   whether a job recruitment fax constituted an advertisement.  859 F. Supp. 180, 181 (E.D. Pa. 1994).

28

1  The plaintiff argued the fax advertised employment (thus property), but the Court rejected this:

2          A company's advertisement of available job opportunities within its
3          ranks is not the advertisement of the commercial availability of
           property. . . .   When, for example, an employer places a "help
4          wanted" ad, no one speaks or thinks of it as a property solicitation or
           an offer of property.  Likewise, when an employer hires an employee,
5          no one characterizes the hiring as a property sale, exchange or
           transaction.  Here, the defendants did nothing more than send a "help
6          wanted" ad on two occasions over the plaintiff's fax machine.  These
           transmitted messages are not unsolicited "material advertising the
7          commercial availability or quality of any property, goods or services"
           within the ordinary meaning of those words of the Act.
8

9  *Id.* at 181-82.

10         Myriad other courts have come to the identical conclusion regarding employment-related

11  outreach in the TCPA context.  *See, e.g.*, *Salmon v. CRST Expedited, Inc*., No. 14-CV-0265-CVE-

12  TLW, 2015 WL 1395237, at *4 (N.D. Okla. Mar. 25, 2015) ("Courts have found that a company's

13  message concerning a possible offer of employment does not constitute telemarketing or an

14  unsolicited advertisement, because no goods or services are being offered for sale by the caller"

15  and reaching the same conclusion); *Gerrard v. Acara Sols. Inc*., 469 F. Supp. 3d 96, 99 (W.D.N.Y.

16  2020) ("The text messages described in the Complaint merely reference an employment

17  opportunity" and therefore are not advertisements or telemarketing); *cf. Murphy*, 2013 WL

18  6865772, at *10 (M.D. Fla. Dec. 31, 2013) (holding that blood donation solicitation messages were

19  not telephone solicitations under the TCPA); *see also Alleman v. Yellowbook*, No. 12-CV-1300-

20  DRH-PMF, 2013 WL 4782217, at *6 (S.D. Ill. Sept. 6, 2013) (finding that a call to confirm the

21  delivery of a Yellowbook was neither an advertisement nor a solicitation because "[t]he call

22  contains no inclination that it is motivated in part by the desire to ultimately sell additional goods

23  or services . . . either during the call, or in the future.").

24         Plaintiff alleges the calls at issue pertained exclusively to recruiting him for employment.

25  The calls discussed the benefits of working for DoorDash, the flexibility and the potential wage.

26  (*See* Dkt. 1 ¶¶ 25, 37.)  Plaintiff's conclusory attempt to portray these calls as "telemarketing calls"

27  that were "soliciting Plaintiff to work for DoorDash ***and/or use its services***," (*see id.* ¶¶ 24, 57,

28

- 10 -

1    emphasis added), are undercut directly by Plaintiff's own specific allegations regarding the content

2    of the calls.  *See Dolemba*, 2015 WL 4727331, at *1 (disregarding "complaint's artful drafting" to

3    focus on the specific factual allegations made as to the content of the call).  Plaintiff even begins

4    his allegations by arguing DoorDash needs to recruit more delivery drivers due to the pandemic.

5    (*See id.* ¶ 20.)  As Plaintiff alleges, these calls thus do not advertise the commercial availability of

6    any products or services, nor do they encourage the purchase or investment in products or services.

7    Plaintiff cannot avoid his own allegations through use of conclusory buzzwords.  *See, e.g.*, *Carson

8    Optical Inc. v. eBay Inc.*, 202 F. Supp. 3d 247, 255 (E.D.N.Y. 2016) ("[S]pecific allegations that

9    directly contradict general allegations will generally control."); *Perlman v. Zell*, 938 F. Supp. 1327,

10   1347 (N.D. Ill. 1996), *aff'd*, 185 F.3d 850 (7th Cir. 1999) ("In the event of a conflict, specific

11   factual allegations control over general allegations that state legal elements, and if a plaintiff pleads

12   particulars that show he has no claim, then he has pleaded himself out of court.").

13         The calls at issue contrast directly with the calls at hand in *Chesbro*, the Ninth Circuit's

14   seminal case on this very issue.  *See Chesbro*, 705 F.3d at 913.  *Chesbro* involved a putative TCPA

15   class action stemming from automated calls from Best Buy to a plaintiff on the national do not call

16   list who had requested that the calls stop.  *See id.* at 916.  The calls concerned Best Buy's Reward

17   Zone program and notified the plaintiff that his "Reward Zone" certificates were going to expire

18   if not used by a certain date and of changes to the Reward Zone program.  *Id.* at 916-17.  The Ninth

19   Circuit determined that the calls were advertisements or telemarketing because:

20         We approach the problem with a measure of common sense. The
21         robot-calls urged the listener to "redeem" his Reward Zone points,
           directed him to a website where he could further engage with the
22         [Reward Zone Program], and thanked him for "shopping at Best
           Buy." ***Redeeming Reward Zone points required going to a Best***
23         ***Buy store and making further purchases of Best Buy's goods.***
           There was no other use for the Reward Zone points. ***Thus, the calls***
24         ***encouraged the listener to make future purchases at Best Buy***.

25   *Id.* at 918 (emphasis added).  Though there was an informational component to the call, the purpose

26   at the end of the day was to encourage purchases.  No such purpose exists for the calls at issue as

27   Plaintiff alleges.  The sole purpose was employment.

28

1    Plaintiff provides not a single factual allegation to suggest the calls at issue pertained to

2    anything other than employment.  Plaintiff's own allegations foreclose his claim.  *See Reardon*,

3    115 F. Supp. 3d at 1096 ("[T]he texts sent to prospective drivers in this case do not promote goods

4    or services and are not advertisements or telemarketing efforts.").  Viewing the calls "with a

5    measure of common sense," Plaintiff alleges solely the receipt of employment opportunity calls.

6    Plaintiff's claim under 47 U.S.C. § 227(b)(1)(B) should thus be dismissed with prejudice.  *See also*

7    *Salmon*, 2015 WL 1395237, at *5 (distinguishing the outcome in *Chesbro*, holding "[t]he call

8    merely advises a person that CRST is looking to hire new drivers . . . .").  Plaintiff has, by his

9    affirmative allegations, pleaded himself out of court.  No amendment could cure these defects and

10   change the nature of the calls at issue.

11
12
            iii.    *Job recruitment calls are not telephone solicitations under the TCPA and*
                    *thus Plaintiff's claim under 47 U.S.C. § 227(c)(5) must be dismissed.*

13   Plaintiff's claim under 47 U.S.C. § 227(c)(5) is predicated on an alleged violation of the

14   corresponding regulation, 47 C.F.R. § 64.1200(c)(2), which prohibits the placement of "telephone

15   solicitations" to residential numbers on the national do not call list (with certain exceptions not

16   pertinent at this stage of the case).  *See* 47 C.F.R. § 64.1200(c)(2).  A telephone solicitation is

17   defined nearly identically as the term "telemarketing" to mean "the initiation of a telephone call

18   or message for the purpose of encouraging the purchase or rental of, or investment in, property,

19   goods, or services . . . ."  *Id.* § 64.1200(f)(15); *see also* 47 U.S.C. § 227(a)(4).

20   Plaintiff's claim under 47 U.S.C. § 227(c)(5) thus fails for the identical reason as his first

21   claim—namely, Plaintiff did not, by his own allegations, receive any telephone solicitations.

22   Given the similarities in definition between "telephone solicitation" and "telemarketing," *compare*

23   47 C.F.R. § 64.1200(f)(15) *with* 47 C.F.R. § 64.1200(f)(13), the *Reardon* analysis remains

24   persuasive here.  *See Reardon*, 115 F. Supp. 3d at 1097 ("Viewing Uber's relationship with its

25   drivers in this light, the texts from Uber seeking to recruit drivers were not attempts to promote a

26   'good' (its application) to those drivers, but instead was an attempt to recruit drivers so that those

27   potential drivers could provide services to riders.").

28

Likewise persuasive is the analysis in *Friedman* concerning job recruitment calls in the context of the telephone solicitation definition. *See Friedman*, 2013 WL 4102201, at *6. As noted above, the call at issue in *Friedman* concerned an invitation to a job recruiting webinar. *Id.* at *1. The Court reviewed the definition of a "telephone solicitation" and stated that "[t]he Court must determine whether the intent of the call is to offer property, goods, or services for sale during the call or in the future." *Id.* at *6. Reviewing the purpose of the call and the allegations, the Court held that "the messages were intended to inform Plaintiff of the opportunity to enter into an independent contractor position with Defendant, and not to offer goods or services for sale." *Id.*

Persuasive authority also abounds in other analogous contexts. In *Orea v. Nielsen Audio*, Judge Spero evaluated whether market survey calls were telephone solicitations in the context of a claim under 47 U.S.C. § 227(c)(5) predicated on alleged calls to a number on the do not call list. *See* No. 14-cv-04235, 2015 WL 1885936, at *1 (N.D. Cal. Apr. 24, 2015). The court first noted that the calls did not encourage any purchase of goods or services. *Id.* at *2 ("As alleged, they only ask Plaintiff to participate in a TV and radio rating survey."). The court next addressed the argument that the calls were solicitations because Neilson was effectively "purchasing" the plaintiff's "labor and information," and readily disregarded this argument as absurd in light of the statutory definition's requirement that the purchase be made "by the consumer, not by the caller." *Id.* at *3. The court also found there were no allegations to suggest that the calls were an indirect encouragement to purchase a product or service. *See id.* ("There is no allegation that Nielsen encouraged Plaintiff to purchase its customers' products or services during the call. Likewise, there is no indication that Plaintiff's survey responses will be used by Nielsen or its customers to make a future sale to Plaintiff."). The complaint was dismissed with prejudice. *Id.* at *5.

In *Murphy v. DCI Biologicals*, a Middle District of Florida court evaluated a motion to dismiss a claim predicated on an alleged violation of 47 C.F.R. § 64.1200(c) in the context of text messages regarding blood plasma donation. *See* 2013 WL 6865772, at *3. Though the messages indicated payment for participating, the Court held that because "neither of the messages in this case encouraged Murphy to purchase, rent, or invest in anything, they do not constitute 'telephone

solicitations' under the TCPA.  On the contrary, one message asked Murphy to sell his blood to DCI Biologicals Orlando."  *Id.* at \*10; *see also Alleman*, 2013 WL 4782217, at \*6 (holding call not a solicitation because "[t]he call contains no inclination that it is motivated in part by the desire to ultimately sell additional goods or services . . . either during the call, or in the future.").

Plaintiff makes no factual allegations to suggest that any of the calls were placed in whole or in part to encourage the purchase of any property, good or service, either now or sometime in the future.  Instead, the factual allegations conclusively establish that the calls as alleged pertained to employment opportunities.  (*See* Dkt. 1 ¶¶ 20, 25-38.)  These calls are not solicitations as a matter of law, and Plaintiff's conclusory reference to DoorDash's "products and/or services," (*see id.* ¶¶ 24, 57), do nothing to alter this conclusion.  *See, e.g.*, *Friedman*, 2013 WL 4102201, at \*6 ("The Court finds that Defendant's messages also do not constitute telephone solicitations because the messages are not intended to encourage Plaintiff to engage in future commercial transactions with Defendant to purchase or invest in property, goods, or services.").

The calls as Plaintiff alleges were solely employment recruitment calls.  These calls are not telephone solicitations and thus Plaintiff cannot pursue a claim under 47 U.S.C. § 227(c)(5) for the alleged violation of 47 C.F.R. § 64.1200(c)(2).  This claim should be dismissed with prejudice. As noted above, Plaintiff has pleaded himself out of court by affirmatively stating the content of the calls at issue.  No amendment could cure this defect.

## CONCLUSION

For the reasons set forth above, DoorDash respectfully requests this Court: (i) dismiss the Complaint with prejudice; and (ii) award any other relief this Court deems equitable and just.

Dated:  December 15, 2021                    By:    /s/ Mark S. Eisen

Mark Eisen (CA 289009)
**BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP**
meisen@beneschlaw.com

*Attorneys for DoorDash, Inc.*